UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

C. WHITMORE,

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

CASE NO. 3:24-cv-05359-DGE

ORDER REMANDING FOR AWARD OF BENEFITS

Plaintiff seeks review of the denial of his application for Social Security Benefits. Plaintiff contends the Administrative Law Judge ("ALJ") erred by rejecting his symptom testimony and medical opinion evidence. For the reasons discussed below, the Court **REVERSES** the Commissioner's final decision and **REMANDS** this case for award of benefits.

## I. BACKGROUND

### A. Factual Background

Plaintiff was born on January 20, 1981. Administrative Record ("AR") 2746. Plaintiff enlisted in the United States Army during his junior year of high school. AR 1100. Plaintiff

graduated from high school in 1999 and served in the Army until 2019. AR 1100, 2702. During his military career, Plaintiff primarily worked as a heavy equipment mechanic and a driving instructor. AR 256, 2296. On September 27, 2019, Plaintiff was medically discharged from the Army. AR 200. The Department of Veterans Affairs ("VA") determined Plaintiff was "totally and permanently disabled due solely to [his] service-connected disabilities." AR 200. Since then, Plaintiff has not worked. AR 2717–2718.

Plaintiff alleges he is unable to work because of both physical and mental impairments. *See* AR 74–75, 87, 242, 255, 258–260, 302, 312, 316. Many of Plaintiff's physical impairments, such as his chronic lower back and neck pain, stem from twenty years of Army service. AR 572. Plaintiff has a traumatic brain injury ("TBI") that he sustained hitting his head on a forklift while serving in Iraq. AR 1463. Plaintiff's TBI has caused memory issues, tinnitus, and concentration issues. AR 1463. Plaintiff's mental impairments, post-traumatic stress disorder, anxiety, and depression, also stem from his tour of duty in Iraq. AR 552, 2201.

**B. Procedural Background**

Plaintiff filed an application for Disability Insurance Benefits ("DIB") pursuant to 42 U.S.C. § 423 (Title II) on May 30, 2019, alleging a disability onset date of October 22, 2018. AR 74. Plaintiff's application was denied initially and on reconsideration. AR 74–85, 87–98, 99–101, 103–105. Plaintiff's requested hearing was held before ALJ Lawrence Lee on July 10, 2020. AR 33–72. On August 27, 2020, ALJ Lee issued a written decision finding Plaintiff was not disabled pursuant to the Social Security Act. AR 2338–2358. On December 15, 2020, the Appeals Council denied Plaintiff's request for review. AR 1–6.

On February 9, 2021, Plaintiff filed a complaint in this Court challenging ALJ Lee's decision. AR 2365–2370. On September 16, 2021, United States District Judge Richard A.

Jones granted a motion for a stipulated remand, directing the Appeals Council to instruct the ALJ to further develop the record, offer Plaintiff the opportunity for a new hearing, and issue a new decision. AR 2375–2376. The parties agreed the ALJ would reevaluate and consider the medical opinions of Bradley Roter, M.D., and Judith Milner, M.D. and "reevaluate Plaintiff's subjective complaints and further consider the nature and severity of his impairments, including headaches, insomnia, sleep apnea and obesity, and their combined effect." AR 2375–2376. On December 16, 2021, pursuant to the Judge Jones' order, the Appeals Council issued an order remanding this case to an ALJ for further consideration. AR 2377–2382.

On April 7, 2022, ALJ Deborah Van Vleck held a new hearing. AR 2273–2337. On May 2, 2022, ALJ Van Vleck issued a decision finding Plaintiff was not disabled. AR 2759–2790. On July 1, 2022, Plaintiff filed a complaint in this Court. AR 2809–2810. On April 19, 2023, United States District Judge Ricardo Martinez granted a motion for a stipulated remand, directing the ALJ to further develop the record, offer Plaintiff the opportunity for a new hearing, and to issue a new decision. AR 2796. On May 26, 2023, the Appeals Council remanded this case for further consideration, noting ALJ Van Vleck's May 2, 2022 decision did not contain an adequate evaluation of the medical opinions of examining providers Drs. Milner and Roter. AR 2803–2806.

On October 18, 2023, ALJ Van Vleck held a new hearing. AR 2742–2758. On January 10, 2024, ALJ Van Vleck issued an unfavorable decision. AR 2711–2735. On May 10, 2024, Plaintiff filed the present complaint seeking judicial review of the ALJ's decision. (Dkt. No. 1.)

**C. ALJ Van Vleck's January 10, 2024 Decision**

ALJs follow a five-part evaluation process to determine whether a claimant is disabled. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520).

At step one, ALJ Van Vleck found Plaintiff met the insured status requirements of the Social Security Act through September 30, 2025, and found Plaintiff had not engaged in substantial gainful activity since his alleged onset date. AR 2717. At step two, "the ALJ must determine whether the claimant has any 'severe medically determinable' impairments." *Ferguson v. O'Malley*, 95 F.4th 1194, 1198 (9th Cir. 2024) (citing 20 C.F.R. § 416.920(a)(4)(ii)). "A 'severe impairment' is one that significantly limits a claimant's ability to perform basic work activities." *Id.* (citing 20 C.F.R. § 416.920(c)).

After evaluating Plaintiff's testimony and the medical record, ALJ Van Vleck concluded Plaintiff had the following severe impairments:

> a combination of physical impairments including obesity, aggravating degenerative disc disease of the lumbar spine, degenerative joint disease of the bilateral shoulders, tendonitis of the right elbow, migraine headaches, obstructive sleep apnea, restless leg syndrome, and a mental impairment diagnoses to include posttraumatic stress disorder, adjustment disorder, major depressive disorder, and anxiety disorder.

AR 2718. At the third step, the ALJ considers whether a claimant has an impairment which meets or equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix I. *See* 20 C.F.R. § 404.1520(d). If a claimant's impairment meets one identified in Appendix I, there is no discretion and the claimant must be awarded benefits. *Young v. Sullivan*, 911 F.2d 180, 183 (9th Cir. 1990). At step three, ALJ Van Vleck concluded Plaintiff did not have any impairments that met the severity of the listed impairments under the regulations. AR 2718–2722. ALJ Van Vleck determined Plaintiff has the residual functional capacity ("RFC") to perform:

> light work as defined in 20 CFR 404.1567(b) except that the claimant can sit for four hours, stand for four hours, and walk for two hours in an eight-hour workday, sitting for not more than two to three hours at one time, and standing or walking for no more than one hour at a time. The [Plaintiff] can never reach overhead with the bilateral upper extremities. The [Plaintiff] can push and pull within the lifting and

> carrying restrictions of light work on a frequent basis. The [Plaintiff] can occasionally climb ramps and stairs, but can never climb ladders, ropes, or scaffolds. The [Plaintiff] can never work in the presence of unprotected heights, and can only occasionally work in the presence of moving machinery or mechanical parts. The [Plaintiff] can never work in the presence of concentrated exposure to extreme heat, extreme cold, or vibration. The [Plaintiff] is limited to performing simple and routine tasks, can use judgment for that type of work, and can deal with changes in a work setting consistent with simple work and simple work-related decisions. The [Plaintiff] can have occasional interaction with coworkers and supervisors. The [Plaintiff] can have occasional interaction with the public.

AR 2722. At step four, ALJ Van Vleck concluded Plaintiff is unable to perform his past relevant work. AR 2733. At step five, ALJ Van Vleck concluded Plaintiff could perform other jobs that exist in significant numbers in the national economy. AR 2734–2735.

**D. Issues for Review**

In his opening brief, Plaintiff raises the following issues: (1) whether ALJ Van Vleck erred in rejecting Plaintiff's testimony regarding his physical limitations; (2) whether ALJ Van Vleck erred in rejecting Plaintiff's testimony regarding his mental health limitations; (3) whether Plaintiff's conditions preclude any form of sustained gainful employment; (4) whether ALJ Van Vleck ignored Dr. Roter's opinion regarding Plaintiff's migraines; (5) whether ALJ Van Vleck erred in rejecting Dr. David Widlan's medical opinion; and (6) whether ALJ Van Vleck erred in providing a selective review of Medical Expert Dr. Steven's opinion. (Dkt. No. 6.) Plaintiff asks the Court to remand this case for an award of benefits. (*Id.* at 16.)

## II. STANDARD OF REVIEW

The Court may reverse the ALJ's decision only if it is legally erroneous or not supported by substantial evidence of record. *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020). The Court must examine the record as a whole, but cannot reweigh the evidence or substitute its judgment for the ALJ's. *Winans v. Bowen*, 853 F.2d 643, 644–645 (9th Cir. 1987). When evidence is susceptible to more than one interpretation, the Court must uphold the ALJ's interpretation if

rational. *Ford*, 950 F.3d at 1154. Further, the Court may not reverse an ALJ's decision on account of an error that is harmless. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006).

## III. DISCUSSION

### A. Standard for Evaluating Medical Opinions

ALJs must consider every medical opinion in the record and evaluate each opinion's persuasiveness, with the two most important factors being "supportability" and "consistency." *Woods v. Kijakazi*, 32 F.4th 785, 791 (9th Cir. 2022) (citing 20 C.F.R. § 404.1520c(a)). Supportability concerns how a medical source supports a medical opinion with relevant evidence, while consistency concerns how a medical opinion is consistent with other evidence from medical and nonmedical sources. *See id*. at 791–792 (quoting 20 C.F.R. § 404.1520c(c)(1)–(2)). Under the regulations, "an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Id.* at 792 (citing 20 C.F.R. § 404.1520c(c)(2)).

The ALJ's evaluation of medical opinions must be based on a "holistic view of the record." *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014). A single positive observation does not render a medical professional's diagnosis unsupported. *See Smith v. Kijakazi*, 14 F.4th 1108, 1115 (9th Cir. 2021). An ALJ may not "cherry-pick" but, rather, must evaluate a conflict between treatment notes and medical opinions "in context of the overall diagnostic picture the provider draws." *Ghanim*, 763 F.3d at 1162, 1164 (9th Cir. 2014) (quoting *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001) (internal quotations omitted)).

1. <u>ALJ Van Vleck erred in rejecting Dr. Widlan's Opinion</u>

Plaintiff argues ALJ Van Vleck erred in rejecting Dr. David Widlan's medical opinion. (Dkt. No. 6 at 14.)

Dr. Widlan conducted a psychological examination of Plaintiff on March 25, 2022. AR 2702–2706. Dr. Widlan's examination consisted of: (1) a clinical interview with Plaintiff including a mental status examination; (2) records from VA from October 2018; (3) a QTC exam performed by the VA by Dr. Milner from 5/24/19; (4) a sleep apnea study from VA from 5/22/19; (5) records from the Department of Defense from 10/22/19 to 11/1/19; (6) records from Madigan Army Medical Center from 5/19/19 to 5/24/19; and (7) records from the VA American Lake from 11/5/19 to 5/11/20. AR 2702. After conducting the examination and reviewing the record, Dr. Widlan stated:

> [Plaintiff] suffers from Post-Traumatic Stress Disorder and Major Depressive Disorder. The Mental Status Examination indicated some deficits in memory, concentration, with more significant deficits in social reasoning. He can accept simple instruction. More complex tasks would be difficult for him. He does not appear able to persist with adequate pace. He is not able to negotiate simple social stressors on a consistent and routine bases. He likely has considerable deficits in ADLs.

AR 2706.

Dr. Widlan opined that Plaintiff "meets the mental health listings for Depression and Anxiety. He meets the mental health listing 12.04 for Depressive, bipolar and related disorders. With regards to Criterion A, he meets all 9 symptoms including suicidal ideation, depressed mood, and sleep disturbance." AR 2706. He stated Plaintiff "is not capable of applying information, interacting with others, persisting and maintaining pace, and adapting in a competitive setting." AR 2706. Additionally, Dr. Widlan opined Plaintiff "meets the Mental Health listing 12.06 for Anxiety and obsessive-compulsive disorders." AR 2706. Dr. Widlan found Plaintiff met all six symptoms of Criterion A, including "irritability, restlessness, and sleep

disturbance" and "also experiences both criteria for panic attacks and experiences Marked or Extreme limitations in all four areas of Criterion B." AR 2706.

On March 30, 2022, Dr. Widlan completed a Mental Residual Functional Capacity Assessment form. 2707–2710. Dr. Widlan stated that Plaintiff's prognosis was poor and opined that Plaintiff had a range of moderate, marked, and extreme work-related limitations stemming from his mental health impairments. AR 2708–2710. Dr. Widlan opined that Plaintiff's mental health impairments impacted him in all areas of functioning and stated Plaintiff "struggles with basic social interactions as well as simple [activities of daily living]." AR 2710. Dr. Widlan stated Plaintiff's impairments would "substantially interfere" with his ability to work on a regular and sustained basis at least 20% of the time. AR 2710. Dr. Widlan stated Plaintiff would need to miss 20 days of work per month due to his mental impairments. AR 2710.

ALJ Van Vleck rejected Dr. David Widlan's opinions as unpersuasive. AR 2731. ALJ Van Vleck found that while Dr. Widlan's "observations provide some support for [his] conclusions, they represented a mere one-time examination, and appear inconsistent with the claimant's level of mental function documented in treatment records." AR 2731. An ALJ may consider the length, purpose, and extent of the treating relationship in considering the persuasiveness of a medical opinion. *See* 20 C.F.R. § 404.1520c(c)(3). However, the fact that Dr. Widlan examined Plaintiff once is not, in itself, a sufficient basis for rejecting his opinion. *See Yeakey v. Colvin*, Case No. CV13–05598–BJR, 2014 WL 3767410, at *6 (W.D. Wash. July 31, 2014) ("Discrediting an opinion because the examining doctor only saw claimant one time would effectively discredit most, if not all, examining doctor opinions."); *Keri J. v. Comm'r of Soc. Sec.*, No. 3:20-CV-5779-TLF, 2021 WL 4026320, at *2 (W.D. Wash. Sept. 3, 2021) ("[T]he fact that [the provider] only examined Plaintiff twice is not, in and of itself, a valid reason for

discounting her opinion, especially in light of the revised regulations, which eliminate the regulatory distinction between 'treating' and 'examining' opinions, and provide that an examining source 'may have a better understanding' of an individual's limitations.").

Further, to the extent ALJ Van Vleck asserts Dr. Widlan based his opinion solely on the results of his examination, this conclusion is not supported. As discussed above, Dr. Widlan based his report on a review of the medical record in addition to conducting a clinical interview and a mental status examination. AR 2702.

ALJ Van Vleck also determined Dr. Widlan's opinion was inconsistent with the record. ALJ Van Vleck indicated that "mental status examinations conducted at American Lake VA Medical Center in June and July 2021 found that the claimant's mood was euthymic and his cognition grossly intact" with Plaintiff stating he was "doing well during day with mood and energy and focus." AR 2731. ALJ Van Vleck further found that at a September 2022 follow-up visit, Plaintiff "noted improvement regarding his mental health symptoms and had normal signs on a mental status examination." AR 2732. ALJ Van Vleck concluded that in the absence of recent treatment records corroborating Dr. Widlan's observations, his opinions regarding the claimant's mental function were overly restrictive and unpersuasive. AR 2732.

ALJ Van Vleck's findings are a selective reading of the evidence and are not supported by the record, which provides ample support for Dr. Widlan's opinion that Plaintiff has deficits in memory, concentration, social reasoning, cannot complete complex tasks, and cannot deal with simple social stressors. *See* AR 276, 309, 553, 554, 572, 2201, 2202, 2205, 2321–2322, 2326, 2329, 2330, 2317, 2705. Moreover, Dr. Widlan's opinion concerning plaintiff's anxiety, depression, and anxiety symptoms are also supported by the record. *See* AR 552–555, 968, 1061, 1100–1101, 1366, 1374, 1386, 1391, 1393, 2085, 2086, 2158, 2202–2204, 2213–2214,

2223, 2228, 2668, 2703–2705. Here, ALJ Van Vleck "cherry-picked" the evidence to support her conclusion rather than evaluating Dr. Widlan's entire opinion in context with the record. *See Ghanim*, 763 F.3d at 1162, 1164. Further, with respect to the alleged improvement in Plaintiff's mental health symptoms, as the Ninth Circuit has emphasized in discussing mental health issues, it is error for an ALJ to cite isolated instances of improvement in a claimant's mental health as evidence that he or she can work, given the extent to which mental health symptoms wax and wane in the course of treatment. *See Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014) (With respect to mental health impairments, "[c]ycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working.").

Accordingly, the Court finds ALJ Van Vleck erred in evaluating Dr. Widlan's opinions. The ALJ did not take a take a holistic view of the record and otherwise improperly determined Dr. Widlan's opinions were unsupported or inconsistent with the entire record.

2. ALJ Van Vleck erred in rejecting Dr. Roter's Opinion

On May 22, 2019, Dr. Roter completed several disability benefits questionnaires for the VA in connection with Plaintiff's impairments. Dr. Roter completed questionnaires for Plaintiff's sleep apnea, headaches, back conditions, and elbow and forearm conditions. AR 2161–2198. As part of completing the questionnaires, Dr. Roter reviewed Plaintiff's VA medical records and Genesis Electronic Medical Records. AR 2164, 2171, 2184.

Dr. Roter opined that even with a CPAP Plaintiff's sleep apnea impacted his ability to work, stating "[Plaintiff] has decreased concentration due [to] multiple issues resulting in 40% reduction in quality work completed. [Plaintiff's] estimate is that the daytime hypersomnolence

portion due to sleep apnea . . . is about 15%." AR 2162. With respect to Plaintiff's migraine symptoms, Dr. Roter found Plaintiff was diagnosed with a migraine condition in January of 2019. AR 2168. Dr. Roter found Plaintiff has "characteristic prostrating attacks of headache pain" once every month. AR 2169. Dr. Roter opined that Plaintiff's attacks are "productive of severe economic inadaptability." AR 2169. Dr. Roter further opined that for one hour, twice a week, Plaintiff would have a 50% reduction in the quality of his work output due to his migraines. AR 2170. Dr. Roter further opined that "[o]nce every two weeks the headache is worse and [Plaintiff] cannot work at all for three hours . . . [o]nce every two months, he has a migraine and cannot work for 8 hours." AR 2170.

Dr. Roter concluded Plaintiff's back condition impacts his ability to work. AR 2182. Specifically, Dr. Roter noted Plaintiff "cannot bend over to the floor, jump, run, walk quickly, lift more than 20 pounds, sit for more than 45 minutes, stand at attention for more than 15 minutes, or walk slowly for more than 30 minutes." AR 2182. Furthermore, Dr. Roter found Plaintiff's elbow and forearm conditions impacted his ability to perform occupational tasks. AR 2197. Dr. Roter explained that "[w]hen the right elbow flares up for three hours three times a month he cannot flex his arm at all due to severe pain." AR 2197. Dr. Roter further opined that Plaintiff's "left elbow flares up severely three times a week for an hour and he cannot lift more than 10 pounds or flex to more than 100 degrees." AR 2197.

ALJ Van Vleck found Dr. Roter's opinions unpersuasive, reasoning they were based on "a mere one-time evaluation in connection with an application for VA service-connected disability benefits, rather than reflecting longitudinal observations during the claimant's course of treatment." AR 2730. As previously discussed, the fact that Dr. Roter examined Plaintiff once is not, in itself, a sufficient basis for rejecting his opinion. *See Yeakey*, 2014 WL 3767410,

at *6; *Keri J.*, 2021 WL 4026320, at *2. Further, to the extent ALJ Van Vleck asserts Dr. Roter based his opinion solely on the results of his examination, this conclusion is not supported by substantial evidence. Dr. Roter's assessment also included a review of imaging results, sleep study, and Plaintiff's medical history. *See* AR 2164–2167, 2171, 2184.

Regarding Plaintiff's sleep apnea, ALJ Van Vleck stated Dr. Roter's discussion of sleep apnea contains no objective observations. AR 2730. ALJ Van Vleck's assertion is not supported by the record. As noted by Dr. Roter in his report, on September 12, 2018, Ft. Bliss Sleep Lab performed a sleep study and diagnosed Plaintiff with obstructive sleep apnea. AR 2162. With respect to Plaintiff's headaches, ALJ Van Vleck reasoned that Dr. Roter "documented only the claimant's allegations of headache frequency and severity, further noting that the claimant's headaches had reportedly only just started in January 2019" and were "brought on by discontinuing Ibuprofen." AR 2730. Plaintiff reported his migraine symptoms worsened when he did not take Ibuprofen but explained that even when he takes migraine medication early enough, he experiences prostrating migraine attacks lasting for one to two hours, several times a week. AR 2168, 2322. Furthermore, ALJ Van Vleck erroneously stated Dr. Roter based his opinion entirely on Plaintiff's subjective allegations. Dr. Roter based his opinion on a review of the record, which included objective medical evidence of Plaintiff's migraine symptoms and Plaintiff's history of TBIs. *See* AR 2165–2166. Therefore, substantial evidence does not support ALJ Van Vleck's rationale in rejecting Dr. Roter's opinion regarding Plaintiff's migraines.

Additionally, ALJ Van Vleck found that Dr. Roter's opinion concerning Plaintiff's back condition was not supported by his own examination because Dr. Roter observed the Plaintiff displayed "full 5/5/ motor strength and intact sensation in his bilateral lower extremities, with

negative straight leg raising test results." AR 2730. Moreover, ALJ Van Vleck found Dr, Roter's opinion concerning Plaintiff's elbows to be unsupported because "Dr. Roter observed full 5/5 strength in the bilateral upper extremities, and despite stating that the claimant was limited to one hundred degrees of elbow flexion, Dr. Roter observed the claimant exhibited one hundred thirty degrees of flexion in both elbow joints." AR 2730. "An ALJ may discount a doctor's opinions where the doctor's opinions are not supported by his own medical records or his own clinical findings." *Jones v. Berryhill*, No. C16-5911-RSM, 2017 WL 3614252, at *4 (W.D. Wash. Aug. 23, 2017) (citing *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008); *Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996)). ALJ Van Vleck accurately found Plaintiff's back and elbow "limitations [were] not consistent with the record as a whole because the claimant's treatment notes show that he had consistently had normal gait and intact strength despite some abnormalities concerning range of motion." AR 2731. The record demonstrates Plaintiff had normal gait and strength. *See* AR 77, 90–91, 629, 2556, 2559, 2561, 2563, 2567, 2955, 2960, 2970, 2974, 2979.

Finally, ALJ Van Vleck found Plaintiff engaged in daily activities that are not consistent with the degree of limitation found by Dr. Roter. AR 2731. For example, ALJ Van Vleck notes Plaintiff was able to travel to visit family and friends, relocated to a large plot of land where he resided independently for some time, hunted, and drove a few times a week. AR 2731.

In early 2020, Plaintiff took a short flight to Eastern Washington to spend four days with his father, who he had not seen in five years. AR 48–49. To prepare for the flight Plaintiff took extra medication and reported it was painful, but he "was able to make it through" however; by the time he arrived at the airport he was "sore and beat up." AR 50. Plaintiff also travelled to El Paso, Texas to visit his military friends. AR 2211. However, he forgot his pills and spent "a

very miserable few days there as he got little sleep, was in constant pain, and did his best to put on a happy face." AR 2211–2212. Here, the evidence of Plaintiff's travelling and driving is not sufficient to establish that such travelling was inconsistent with Dr. Roter's medical opinion. *See e.g. Wilson v. Comm'r of Soc. Sec.*, 303 F. App'x 565, 566 (9th Cir. 2008) (quoting *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir.1998)) ("Evidence that [Plaintiff] occasionally drove to Phoenix, took a vacation to Hawaii, and sometimes found the energy to go grocery shopping are not clear and convincing evidence that the claimant led a life that is not compatible with disabling pain and limitations. [Plaintiff]'s undertakings were 'sporadic and punctuated with rest. Even more prolonged undertakings might be consistent with [her disability].'") (internal citations omitted).

In addition, ALJ Van Vleck does not cite any record in support of her assertion that Plaintiff lived independently in a cabin for a prolonged period of time, perhaps, because the record supports the opposite. Plaintiff testified during three hearings he lived with his girlfriend. AR 40, 2282, 2757. Further, Plaintiff's hunting also does not serve as a basis to reject Dr. Roter's testimony. Plaintiff testified he hunts in a hunting blind that was designed so that he could sit, stand, and lay down as necessary because he cannot sit or stand for a prolonged period of time. AR 53, 2321. And the State of Washington issued him a permit to hunt with a crossbow because "it's painful for [him] to draw a regular archery bow back." AR 2288. Moreover, a claimant need not live alone in a dark room to be eligible for benefits. *See Reddick*, 157 F.3d at 722 ("claimants should not be penalized for attempting to lead normal lives in the face of [their] limitations"). In sum, Plaintiff's daily activities are not inconsistent with Dr. Roter's findings.

Accordingly, ALJ Van Vleck erred in rejecting Dr. Roter's opinions concerning Plaintiff's sleep apnea and migraines, but did not err in rejecting Dr. Roter's opinions concerning Plaintiff's back and elbow conditions.

**B. Plaintiff's Additional Arguments Regarding ALJ Van Vleck's Decision**

Plaintiff argues ALJ Van Vleck erred in providing a selective review of Dr. Stevens's opinion and rejecting Plaintiff's symptom testimony about his physical and mental impairments. (Dkt. No. 6 at 4–15). Having concluded ALJ Van Vleck erred in evaluating the medical opinions of Dr. Widlan and Dr. Roter, the Court declines to address Plaintiff's remaining arguments. *See Hiller v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [plaintiff's] alternative ground for remand.").

## IV. Remedy

Plaintiff requests the Court remand this case for an award of benefits. (Dkt. No. 6 at 16.) The decision to award benefits is within the discretion of the court. *See Trevizo v. Berryhill*, 871 F.3d 664, 682 (9th Cir. 2017). The Ninth Circuit has developed a three-step analysis for determining when to remand for a direct award of benefits. Such remand is generally proper only where:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

*Id.* at 682–683 (quoting *Garrison*, 759 F.3d at 1020).

Here, as in *Trevizo*, the record of medical evidence in Plaintiff's case is extensive. *See* 817 F.3d at 683. Since Plaintiff filed his claim in 2019, there has been three hearings and the

case has been remanded twice. Dr. Roter's medical opinions pertain to Plaintiff's sleep apnea and migraines. As to Plaintiff's sleep apnea, the record has been fully developed. First, on September 24, 2018, Ft. Bliss Sleep Lab diagnosed Plaintiff with obstructive sleep apnea after conducting a sleep study. AR 2161–2162. Then, on February 14, 2023, the Puget Sound American Lake Sleep Center conducted a second sleep study, which also diagnosed Plaintiff with obstructive sleep apnea. AR 2873–2876. Further, the record has also been fully developed as to Plaintiff's migraine symptoms. *See* AR 2070, 2168, 2212, 2201, 2322, 2325. Dr. Widlan opined as to Plaintiff's depression, anxiety, and PTSD, which is well documented in the record. *See* AR 276, 309, 552–555, 572, 968, 1061, 1100, 1366, 1374, 1391, 1393, 1438, 2085, 2086, 2158, 2201, 2202–2205, 2213, 2223, 2228, 2321–2322, 2326, 2329, 2330, 2317, 2668, 2703–2705, 2727; *see also* AR 2733 (ALJ Van Vleck noting "the file contains extensive mental health treatment and therapy records from the VA, which began after the alleged onset date and continued through much of 2021. This evidence, when considered alongside the new evidence . . . are sufficient to support the evaluation of severity of [Plaintiff's] mental impairments and a residual functional capacity in this case.").

As discussed above, ALJ Van Vleck did not provide legally sufficient reasons for rejecting Dr. Widlan's testimony regarding Plaintiff's mental health limitations and erred in rejecting Dr. Roter's opinion regarding Plaintiff's sleep apnea and migraines.

Crediting as true the improperly discredited evidence, ALJ Van Vleck would be required to find Plaintiff disabled on remand. This is because Dr. Widlan found Plaintiff "meets the mental health listing 12.04 for Depressive, bipolar and related disorders" and "meets the Mental Health listing 12.06 for Anxiety and obsessive-compulsive disorders." AR 2706. These findings alone, if credited as true, would require ALJ Van Vleck to find Plaintiff disabled.

Second, the vocational expert testified Plaintiff "would need to produce 85% so no more than 15% off task behavior" in the jobs considered. AR 2335. Dr. Roter found Plaintiff's sleep apnea impacted his ability to work, and "[Plaintiff] has decreased concentration due [to] multiple issues resulting in 40% reduction in quality work completed." AR 2162. With respect to Plaintiff's migraine symptoms, Dr. Roter opined that for one hour, twice a week, Plaintiff would have a 50% reduction in the quality of his work output due to his migraines and that "[o]nce every two weeks the headache is worse and [Plaintiff] cannot work at all for three hours . . . [o]nce every two months, he has a migraine and cannot work for 8 hours." AR 2170. Dr. Widlan opined Plaintiff's mental health impairments would "substantially interfere" with Plaintiff's ability to work at least 20% of the time. AR 2710. Crediting as true Dr. Roter and Dr. Widlan's opinions, Plaintiff would not be able to sustain the jobs identified by the vocational expert. Moreover, the vocational expert opined Plaintiff could not accumulate more than five or six absences within twelve months. AR 2335. Dr. Roter opined Plaintiff would, at a minimum, miss work once every two weeks—in sum twenty-four absences a year. AR 2170. In addition, Dr. Widlan opined Plaintiff would need to miss 20 days of work per month due to his mental impairments. AR 2710. Thus, Plaintiff would not be able to sustain the jobs identified by the vocational expert.

Here, the record has been fully developed, ALJ Van Vleck failed to present legally sufficient reasons for rejecting Dr. Widlan and Dr. Roter's medical opinions. Crediting as true the medical opinions of Dr. Widlan and Dr. Roter, ALJ Van Vleck would be required to find Plaintiff is disabled on remand. Accordingly, remanding for award of benefits is the appropriate remedy.

## V. CONCLUSION

For the foregoing reasons, the Commissioner's final decision is **REVERSED** and this case is **REMANDED** for an award of benefits.

Dated this 9th day of April, 2025.

David G. Estudillo
United States District Judge